IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

DOROTHY LOUIS TAYLOR,           )
                                )
        Plaintiff,              )
                                )
v.                              )        NO. 10-3034
                                )
OFFICE OF THE COMPTROLLER,      )
                                )
        Defendant.              )

## OPINION

RICHARD MILLS, U.S. District Judge:

Pending is the Defendant's motion for summary judgment.

Plaintiff Dorothy Louis Taylor filed a pro se Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5, wherein she alleged discrimination on the basis of race and retaliation by Defendant Office of the Comptroller.

## I. FACTUAL BACKGROUND

### (A)

Plaintiff Dorothy Louis Taylor is an African-American.  She is employed at the Office of Illinois Comptroller and has been so employed

since August of 1988, except for a brief layoff period between August of 1996 and January of 1998.   When the Plaintiff commenced her employment with the Office of the Illinois Comptroller under Roland Burris, she was in the position of a Clerk Typist II, the duties of which included answering the telephone and some typing.  Before she was laid off in 1996, the Plaintiff's job title was changed from a Clerk Typist II to Office Associate, though her duties remained the same.

At all times relevant to the Complaint and prior thereto, the Plaintiff has been a member of the General Teamsters Professional and Technical Union Local 916, Illinois Federation of Teachers, which is a collective bargaining unit.  When the Plaintiff was called back to work in January of 1998, her position was as an Office Assistant, which is a lower paying job. Her duties were to file and retrieve contracts on a shelf in alphanumeric order.  The Plaintiff received requests via a computer or orally.  When that employee was finished with the contract, it was returned to the Plaintiff to place back on the shelf.  When the file was physically removed from the shelf, the Plaintiff placed a red plastic card in the space where the contract

was removed.  As an Office Assistant, the Plaintiff also moved files by placing other contracts in boxes which were shipped to a Records Center to make room for newer files.  The Plaintiff would also train other employees on the file system so she could have assistance in peak seasons, such as the lapsed appropriations period, which is between June and November.  The Plaintiff felt her position was more secure if she belonged to a union.

(B)

On or about August 16, 2005, the Plaintiff applied for and received a promotion to the position of Accounting Specialist. Prior to the time that Plaintiff accepted the position of Accounting Specialist, Debra Burton, who would be her supervisor, discussed with her that there were deadlines and what those deadlines were.  The Plaintiff was the employee with the most seniority who applied for the position of Accounting Specialist in the Funds, Receipts, and Collections Unit.  Because the Plaintiff applied for the position of Accounting Specialist and because she had the most seniority of all applicants who qualified under the union contract, she was offered the position effective August 16, 2005, subject to a three-month probationary

period.  The letter notifying her that she had been promoted to Accounting Specialist stated there was a three-month probationary period.

The three-month probationary period meant the Plaintiff was required to train in the position for at least three months while management assessed her training progress before she could be certified in the position. The letter offering the promotion to the Plaintiff did not indicate that the probationary period was a minimum of three months such that Plaintiff could stay in the position even if she was unable to meet the expectations of her employer during that time.  The three-month probationary period did not guarantee that Plaintiff would be kept in the position for at least three months, if she did not demonstrate the requisite skills to perform the tasks of Accounting Specialist in the Funds, Receipts, and Collections Unit. Thus, the three-month probationary period was a trial period.  Neither John Donelan nor Debra Burton hired Dorothy Taylor for the position of Accounting Specialist, because they did not have such authority.  Rather Steve Valasek, the Director of State Accounting, made the final determination to offer the position of Accounting Specialist in August of

4

2005.  The Plaintiff's direct supervisor in the position of Accounting Specialist was Debra Burton and Burton's supervisor was James Donelan.

The Plaintiff commenced her employment in the position of Accounting Specialist on August 16, 2005.  As with all persons promoted to the position of Accounting Specialist, the Plaintiff was paired with a trainer.  The trainer the Plaintiff was paired with was Kay LeSeure, and the arrangements for training were that LeSeure was to train Taylor for approximately one-half of each day.  LeSeure was selected as the trainer for the Plaintiff because the Plaintiff was to take her position.  LeSeure had also been offered a lateral transfer effective July 25, 2005, and, when not working with the Plaintiff, she was being trained for the other one-half of each work day in the position of an Accounting Specialist in the Court Reporter Program Fiscal Unit, which had different responsibilities than those in the Funds, Receipts, and Collections Unit.

On August 16, 2005, Debra Burton had scheduled a training session between Steve Myers and the Plaintiff for the afternoon, because Myers had experience in entering documents and this provided the Plaintiff with

5

additional exercises in keyboarding so that she could learn the requisite document entry skills.  Burton never had to offer additional keyboarding skills to any Accounting Specialist trainee other than the Plaintiff. However, because the Plaintiff did not demonstrate the requisite keyboarding skills, Burton thought it was important to give the Plaintiff the opportunity for this additional training on the first day of the job.

In relevant part, the policy manual of the Office of the Comptroller states as follows: "Lunch time is one (1) hour.  It may be taken, with supervisory approval, between 11:00 a.m. and 2:00 p.m. or some other time depending on the schedule or shift in each work area."  The regularly scheduled lunch break for the Plaintiff effective August 16, 2005, was 12:30 p.m. to 1:30 p.m.  The normal procedure used by Debra Burton when an employee requested a lunch hour outside of the scheduled time period was to have the employee submit the request in writing.  The work performed in the Funds, Receipts, and Collections Unit was to be completed by 12:30 p.m. each day so that a daily report could be sent to the Office of the Illinois Treasurer for processing, after which workers in the unit would then

begin for the next day's report.  In general, benefit time and lunch breaks in the Funds, Receipts, and Collections Unit are not flexible, because of the deadlines of the unit.

On August 16, 2005, shortly before noon, Debra Burton was approached by the Plaintiff who requested that she be allowed to change her lunch break from 1:30 p.m. to 2:30 p.m. that day.  Initially, Burton told the Plaintiff that she could not change her break that day.  The reason that Burton initially told the Plaintiff that she could not change her lunch break was because Burton had scheduled Steve Myers to train her that day.  However, when the Plaintiff advised her supervisor that she had been requested to attend a court proceeding, Burton agreed to let the Plaintiff change the time of her lunch break, as long as she brought documentation indicating that she was required to attend court.  The Plaintiff then told Debra Burton that she was not required to go, but was to be there as a support person.  The Plaintiff was allowed to change the time of her lunch break.

(C)

The Defendant alleges that Debra Burton did not treat any Caucasians or non-black persons differently than she treated the Plaintiff for court attendance matters.  The Plaintiff believes that in the nine days in her position as an Accounting Specialist trainee, she performed the duties satisfactorily.  However, no one else told the Plaintiff she was performing the position of Accounting Specialist in a satisfactory manner.  Rather, two of her supervisors, John Donelan and Debbie Burton, complained to the Plaintiff that she was unable to perform the duties of Accounting Specialist and she would not be certified in the position.

The duties of an Accounting Specialist in the Funds, Receipts, and Collections Unit require entering and balancing expenditure adjustment transmittals, which are refund documents.  To perform the duties, the Accounting Specialist is required to examine documents to determine whether an original payment was made and whether the money instrument is valid and matches the information on the refund document submitted, after which the figures are balanced, sorted, and stamped, which are then

8

collected by a courier from the Office of the Illinois Treasurer.  In addition, if a document has been processed in error or if there are errors on the document which are corrected by any Accounting Specialist performing those duties, that Accounting Specialist can generate a form letter with the appropriate revisions to inform the agency of the error and any corrections.

During the period of August 16, 2005, and August 30, 2005, Debra Burton observed the Plaintiff having difficulty using a calculator; sorting and stamping documents; and meeting the required deadlines in the position of Accounting Specialist in the Funds, Receipts, and Collections Unit of the Office of the Illinois Comptroller.  During the period of August 26, 2005 to August 30, 2005, Burton observed the Plaintiff using the computer and she demonstrated that she had minimal keyboarding skills. Burton kept a daily log of the deficiencies she observed and those observed by the trainer, Kay LeSeure, during the same period.  Specifically, Burton observed that Plaintiff could not efficiently use the office equipment and word processing program necessary to perform the position of Accounting Specialist; she could not keep up with the pace of the work; she had

9

difficulty in retaining instructions and needed to have procedures explained multiple times; and she had difficulty taking directions from her trainer.

The Office of the Illinois Comptroller has a desk procedure book for instruction on some of the more specific procedures used by the Funds, Receipts, and Collections Unit.  However, this manual was not given to the Plaintiff because she did not progress to the point where the manual would have assisted her in any way.

No one told the Plaintiff she was unable to perform the position of Accounting Specialist because of her race.  The Plaintiff claims that the race discrimination consisted of there never having been a black employee hired as an Accounting Specialist in the Funds, Receipts, and Collections Unit and that all of the new hires in that unit have been Caucasian and have been afforded the entire three months of a probationary period.  The Plaintiff claims that the retaliation consisted of being required to prove how she used her lunch break the first day she was in the position of Accounting Specialist in the Funds, Receipts, and Collections Unit; being told by her supervisors that they did not believe she was capable of performing the

10

position and that they were watching her; and having the promotion rescinded nine working days after she took it.  The Plaintiff claims that she was subject to harassment in that she was required to submit proof of how she used her lunch break on the first day of her position as an Accounting Specialist.  The Plaintiff claims that she was subject to race discrimination in that she was denied training by her supervisor; that she was harassed by her supervisors; that she was not given the same opportunities as Caucasian employees Stephen Myers, Kay LeSeure, and Maggie Markusson because she was not afforded a three-month probationary period before she left the position of Accounting Specialist; and that she was not given a calculator on her desk.

(D)

The Plaintiff compared herself to Kay LeSeure.  When LeSeure took a lateral transfer to the position of Accounting Specialist in the Court Reporter Program Fiscal Unit on July 25, 2005, her direct supervisor became Christine Belle, not Debra Burton, and her duties were different by virtue of the different unit.  LeSeure demonstrated that she had quick

11

keyboarding skills and therefore was unlike the Plaintiff in the position of Accounting Specialist. There was a calculator on the desk of LeSeure, which the Plaintiff used while she was in the position of Accounting Specialist for the Funds, Receipts and Collections Unit. The calculator was at the desk of LeSeure while the Plaintiff was training because LeSeure was using the calculator in the morning while she continued to do work as an Accounting Specialist for the Funds, Receipts, and Collections Unit. If the Plaintiff had successfully completed her training as an Accounting Specialist and been certified, she would have moved to the desk formerly occupied by LeSeure and would have had the use of the calculator at her desk.

The Plaintiff compared herself to Steve Myers in that she was not afforded a three-month probationary period like he was. Myers was unlike the Plaintiff, because he demonstrated that he was able to perform the functions of an Accounting Specialist and he worked on a different kind of document than those which the Plaintiff worked on when she was in the position of Accounting Specialist.

The Plaintiff also compared herself to Charles Lacy because he was

12

given approximately two and one-half months to learn the job before he was found not to meet the training requirements, whereas the promotion of the Plaintiff was rescinded after approximately two weeks or nine working days. Lacy is a Caucasian male who was in the position of Office Associate whose supervisor was Carla Grigsby. Lacy was not certified in the position of Office Associate because, after two and one-half months of training, he did not meet the requirements for the position. The Defendant claims that the positions of Lacy as an Office Associate and Taylor as an Accounting Specialist are different and therefore the comparison is not similar in material respects.

The Plaintiff also compares herself to Maggie Markusson, who replaced the Plaintiff in the position of Accounting Specialist in the Funds, Receipts, and Collections Unit. Unlike the Plaintiff, Markusson demonstrated a proficiency in the position of Accounting Specialist in that she was able to keyboard; enter and balance expenditure adjustment transmittals; sort and stamp the requisite documents in a timely manner; meet deadlines; retain information on the processes to use in the position;

13

and use the appropriate software program for word processing.

The Plaintiff's promotion to Accounting Specialist was rescinded on August 30, 2005. As an Accounting Specialist, the Plaintiff's regularly scheduled lunch break was 12:30 p.m. to 1:30 p.m. The first day the Plaintiff was training in the position of Accounting Specialist, she changed the time she took her regularly scheduled lunch break so she could attend a court hearing. The Plaintiff gave her supervisor approximately 30 minutes' notice before her regularly scheduled lunch break that she wanted to change the time of her break. The Plaintiff knows of no one else who changed their lunch hour on the first day of their probationary period. The Plaintiff was given permission to change her lunch hour on the first day of her promotion, but was asked to provide documentation that she had been in court. The Plaintiff did not have to take benefit time to attend court. The Plaintiff has no one to whom she can compare herself who was allowed to change their lunch break to attend court without having to provide documentation. The Plaintiff was not told she had to produce the documentation because of her race. The Plaintiff was paid for the three-

month probationary period, even though she was only in the position for nine work days.

On August 30, 2005, the Plaintiff returned to her position of Office Assistant and has continued to receive regular salary increases pursuant to the collective bargaining unit.  The Plaintiff filed her Charge of Discrimination, which is the subject of this action, with the Illinois Department of Human Rights ("IDHR"), on January 5, 2006.  In her Charge of Discrimination which is the subject of this action, the Plaintiff claimed that she was subject to retaliation because she had filed Charge No. 1999SF0054.  The Plaintiff filed a Charge of Discrimination with the IDHR on July 27, 1998, and complained that she was the subject of race discrimination in that she received unequal job assignments; was laid off; and returned to a lower job title when she was recalled from the layoff.  The IDHR investigator found that the allegations were unsubstantiated.  The Chief Legal Counsel for the IDHR entered an Order of Dismissal for Lack of Substantial Evidence on the Charge of Discrimination brought in Charge No. 1999SF0054.  The Plaintiff sought review in the Illinois Appellate

Court, Fourth Judicial District, and the appellate court found that there was no discrimination by the Office of Illinois Comptroller as brought in Charge No. 1999SF0054.

On April 1, 2002, the Plaintiff filed a complaint in this Court.  <u>See</u> <u>Taylor v. Attorney General of the State of Illinois, et al.</u>, Case Number 3:02-CV-03096-JES-CHE.  On April 7, 2004, United States District Judge Jeanne E. Scott entered summary judgment in favor of the Defendants and against the Plaintiff.  The judgment was affirmed on appeal.

## II. DISCUSSION

### A. Summary judgment standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(a); <u>see also</u> <u>Sellers v. Zurich American ins. Co.</u>, 627 F.3d 627, 631 (7th Cir. 2010).  The Court construes all inferences in favor of the non-moving party.  <u>See</u> <u>Sellers</u>, 627 F.3d at 631.

Complaints filed by pro se litigants are to be construed liberally.  <u>See</u> <u>Anderson v. Hardman</u>, 241 F.3d 544, 545 (7th Cir. 2001).  However, pro

se litigants must still follow a court's local rules and the Federal Rules of Civil Procedure.  See Cady v. Sheahan, 467 F.3d 1057, 1061 (7th Cir. 2006).

### B. Plaintiff's discrimination claims

(1)

The foregoing facts were taken from the Defendant's alleged undisputed material facts contained in its memorandum in support of its motion for summary judgment.  The Plaintiff did not respond to the Defendants' alleged undisputed material facts.  Rule 56(e) provides that if a party fails to "properly address another party's assertion of fact," then the Court may "consider the fact undisputed for purposes of the motion."  See Fed. R. Civ. P. 56(e)(2).  Moreover, the local rules provide that facts not responded to are deemed admitted.  See CDIL LR 7.1(D)(2)(b)(6).

The Court notes that, in her Response to the Defendant's Motion, the Plaintiff did include her own "Statement of Facts."  Given the Plaintiff's pro se status, the Court has carefully reviewed those alleged facts.  However, many of the alleged facts consist of self-serving statements.  Most

17

of the facts are either immaterial or are not properly supported.

The Plaintiff acknowledged that no one at the Comptroller's Office told her that race played a role in the actions of which she complains. Therefore, the Plaintiff can only prove her claim through the indirect method.  She must show that: (1) she is a member of a protected class; (2) her job performance met her employer's legitimate expectations; (3) she suffered an adverse employment action; (4) similarly situated persons outside of the protected class received more favorable treatment.  <u>See Burnell v. Gates Rubber Co.</u>, 647 F.3d 704, 709 (7th Cir. 2011).  If the Plaintiff meets her burden, then the Defendant must provide a non-discriminatory reason for the challenged action, at which point the Plaintiff must present evidence that the proffered reason is a pretext for racial discrimination.  <u>See</u> <u>id.</u>

Although the Plaintiff is a member of a protected class, she is unable to meet the second prong.  The Plaintiff's assertion that she was meeting her employer's legitimate expectations is not properly supported–it is nothing more than a self-serving statement, which is not enough to create

18

a genuine factual dispute.  See Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 740 (7th Cir. 2006).

The Plaintiff also cannot meet the fourth prong of her prima facie case.  The Plaintiff admitted that there is no one who was treated more favorably with respect to her claim that she should be able to move her lunch hour at will.  Moreover, the Plaintiff is unable to show that she was similarly situated to other individuals in all material aspects.  Based on the undisputed facts, Kay LeSeure and the Plaintiff were at different skill levels.  Charles Lacy was not similarly situated in all material respects because he was in a different position–that of Office Associate.  Moreover, the Plaintiff and Steve Myers were not similarly situated because Myers was able to perform the functions of an Accounting Specialist.  Finally, the Plaintiff has not established she was similarly situated to Maggie Markusson, her replacement.  The undisputed facts establish that Markusson demonstrated a proficiency in the position of Accounting Specialist.

The Plaintiff has not created a genuine dispute as to whether she was meeting her employer's legitimate expectations.  Moreover, she has failed

to point to any similarly situated individuals outside of the protected class who were treated more favorably.  Accordingly, the Plaintiff is unable to establish a prima facie case.  The Defendant is entitled to summary judgment on her race discrimination claims.

(2)

Pursuant to the direct method of proof for proving retaliation, a plaintiff must show: (1) that she engaged in statutorily protected activity; (2) that she suffered a materially adverse employment action; and (3) there was a causal connection between the two.  See Silverman v. Bd. of Educ. of City of Chicago, 637 F.3d 729, 740 (7th Cir. 2011).

Under the indirect method, a plaintiff must establish two of the same elements: that she engaged in statutorily protected activity and suffered adverse employment action.  See id. at 742.  She must also show that she was meeting her employer's legitimate expectations and that she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.  See id.  If the plaintiff meets her burden, the defendant must then produce a legitimate, non-discriminatory reason for

the challenged action, at which point the plaintiff must produce evidence that the proffered reasons were a pretext for retaliation.  See id.

In her Response brief, the Plaintiff does not address the Defendant's argument that she cannot produce evidence of Title VII retaliation.  She does state that Defendant retaliated against her by demanding proof of a non-paid hour.  This relates to her request to change her lunch hour.  The Plaintiff was permitted to change her lunch hour.  This does not constitute an adverse employment action.  Even if it did qualify as an adverse action, the Plaintiff can point to no similarly situated employee who was permitted to change her lunch hour on the first day of her probationary period.

The Court concludes that Plaintiff is unable to establish a prima facie case of retaliation.

Ergo, the Defendant's motion for summary judgment [d/e 22] is ALLOWED.

The Clerk will enter judgment in favor of the Defendant and against the Plaintiff.

Case closed.

21

ENTER: October 19, 2011

FOR THE COURT:

s/Richard Mills
United States District Judge